EDWARD A. DUFRESNE, JR., Chief Judge.
 

 | ¡¡This is a worker’s compensation proceeding which resulted in a determination favorable to James McKinley, the employee-claimant. His employer-appellant, Klein Steel, Inc., now appeals that determination. For the following reasons, we affirm. We further award an additional $2,000 in attorney fees for legal services on this appeal.
 

 The undisputed facts are as follows. On August 15, 2007, claimant was carrying a stair railing on his job when he stumbled and hit his head on a stair structure. His co-worker at the site drove him back to the employer’s office to report the injury. Martha Klein, the owner’s wife, told claimant to report to North Oaks Medical Center for treatment, and he did so. Bella Holden, the admitting clerk at the hospital, testified that claimant identified his employer as Klein Steel and gave her a telephone contact number. The number given was that of a Klein Steel cell phone which was provided to claimant when he was employed by the company. She called this number and got a voice mail from a Robert Stafford. Stafford was a former Klein employee to whom the phone had previously been assigned, and his voice mail message was still on it at the time of this accident. Holden left a call back message but never received one. She said she never |smentioned a drug test to claimant, and to her knowledge claimant never refused such a test.
 

 After treatment, claimant returned to Klein Steel and spoke to Martha Klein again. She asked if he had been given a drug test and he said no, and further that no one had said anything about such a test at the hospital. She was surprised by his answer and called the hospital to find out why the test had not been given. However, she did not send claimant back to the hospital for a test, nor did she even suggest that he return for a test.
 

 When she called the hospital, Klein spoke to Mariem Lovewhite, a staff coordinator, who said she would look into why no drug test was conducted. In late August, Lovewhite sent Klein the results of her inquiry, which were that Holden had called the contact number given to her by claimant and left a message, but no return call was ever received.
 

 As to claimant’s injury, he was initially treated for a scalp laceration. He was discharged with a light duty restriction, and Martha Klein testified that her husband offered to find something for claimant to do with the restrictions, but no specific job was shown to have been of
 
 *518
 
 fered. Claimant did not return to work after the accident.
 

 On September 18, 2007, claimant was seen by Dr. Lori Summers, a neurosurgeon. On November 26, 2007, he underwent the first of two surgeries for spinal disc problems related to his injury. In February of 2008, Dr. Summers notified the worker’s compensation adjuster that claimant had been unfit for any work from the time she first saw him on September 18.
 

 Worker’s compensation was paid to claimant from the time of the accident until September 5, 2007, at which time his “light duty” status was not continued by the original treating physician. However, upon the November 26 surgery, benefits Lwere recommenced and apparently are continuing. Also, all medicals have been paid. However, the insurer refused to pay benefits for the period of September 18, 2007, to November 26, 2007. Claimant brought this claim to recover benefits for this period.
 

 The Worker’s Compensation Judge ruled that claimant was entitled to temporary total disability benefits from September 18, to November 26, 2007. She also ruled that defendants had failed to reasonably controvert claimant’s entitlement to such benefits, and awarded a penalty of $2,000, and attorney fees of $3,000. Defendants have now appealed this judgment, and claimant has answered the appeal seeking an additional $2,000 in attorney fees for appellate work in this court.
 

 Appellant’s theory of the case is that claimant gave fictitious employer information to the hospital admitting clerk, Bella Holden, in order to prevent her from verifying his worker’s compensation status, and to further circumvent the employer from requesting that a drug test be done. Specifically, it asserts that claimant gave his company cell phone number and the name of Robert Stafford as the employer contact person, knowing that this person was no longer employed by Klein.
 

 To support this theory it introduced the hospital admit form and a computer generated lists of calls and correspondence related to the claim. The admit form shows that Klein Steel was claimant’s employer and lists that company’s phone number as that for claimant’s cell phone. Nowhere on that form does the name Robert Stafford appear. In fact, the only mention of Robert Stafford in the entire hospital file appears in one of the computer generated items entered by Bella Holden and dated August 15, 2007, which simply states “called work Robert Stafford @ l-28pm n/o left message.” Holden testified on direct examination that |sshe recalled claimant giving her Stafford’s name as the contact person. However, when it was suggested on cross-examination that she may have picked up the name from the voice mail she gave a somewhat convoluted explanation that this would have been somehow illegal. It was also undisputed that the voice mail on the phone did give the name of Robert Stafford to the caller.
 

 Claimant, for his part, testified that he did not know who Robert Stafford was, but did know a former Klein employee named Bob. Martha Klein testified that Stafford had not worked at the company for about a year before the incident at issue here, and could not recall whether claimant’s and Stafford’s employment had ever overlapped. Claimant also introduced two pri- or admission forms to the hospital for non-work related problems, one on July 25, 2007, and another on August 10, 2007. The admit forms for both give the same information as that appearing on the August 15, 2007, form as to Klein being his
 
 *519
 
 employer and the “Stafford” phone number.
 

 After hearing the above evidence, the judge ruled that Bella Holden’s testimony was not given weight because it was “incredulous.” She noted that there was absolutely no evidence to establish that claimant had been offered a drug test and refused it, and further noted that upon his return to Klein Steel he freely stated that no drug test had been offered or administered. Martha Klein corroborated this testimony, and admitted that she did not send him back to the hospital for such a test. Also weighing in the judge’s decision was the fact that claimant had given the same employer name and phone number on two prior hospital admissions which were not worker’s compensation related. She summarized her findings as to the intoxication issue by stating that “there was no evidence of intoxication, no request for a drug test, no refusal to take a drug test, and no testimony or evidence of any appearance of drug or alcohol usage by claimant on August 15, 2007.” As to [f,claimant’s entitlement to benefits between September 18, 2007, and November 26, 2007, she found that there was no contradictory medical evidence to refute claimant’s injury and resulting disability during this period. She finally concluded that there was a failure to reasonably controvert claimant’s entitlement to benefits during that time frame and awarded benefits, penalties, and attorney fees.
 

 When issues on appeal involve factual determinations, the standard of review is “manifest error.”
 
 Stobart v. State through Dept. of Transp. and Develop.,
 
 617 So.2d 880 (La.1993). Moreover, when there are two permissible views of the evidence, the trier of fact’s determination cannot be manifestly erroneous.
 
 Id.
 

 Here, the trier of fact made a specific finding that the testimony of Bella Holden was highly problematical, and did not give it much weight. When considering this determination as to this testimony in light of the entire record, we find no manifest error, and therefore must affirm that finding.
 

 The laws which appellant cites to justify its refusal to pay benefits are La. R.S. 23:1081, related to the intoxication defense, and La. R.S. 23:1208, related to false statements. As to the intoxication defense, section (7)(b) provides that if the employee refuses to submit to a drug test a presumption of intoxication arises. The trier of fact found that no such test was either offered or refused, and the record overwhelmingly supports this finding. Thus, no presumption of intoxication ever arose, there was no other evidence to establish intoxication, and the trial judge correctly rejected this defense.
 

 As to false statements, the jurisprudence is clear that the statement must be false, it must be willfully made, and it must be made for the purpose of obtaining benefits.
 
 Resweber v. Haroil Const. Co.,
 
 94-2708 (La.9/5/95), 660 So.2d 7. The trier of fact found that claimant did not willfully make any false statement for 17purposes of obtaining benefits. Again, the record provides ample factual support for this conclusion, and it is clearly not manifestly erroneous.
 

 The final issues on appeal concern the awards of penalties and attorney fees. Such determinations are factual, and therefore subject to the manifest error standard of review.
 
 Blanchard v. Rental Service Corp., USA,
 
 5-460 (La.App. 5 Cir. 1/17/06), 920 So.2d 911. In the present case there was ample evidence to support the determination that the employer did not reasonably controvert the claim. The defense’s entire theory of the matter was based on the mere speculation that claim
 
 *520
 
 ant had lied to the admit clerk at the hospital to circumvent the administration of a drug test. However, benefits were paid from November 26, 2007, including the costs of two surgeries, based on the same information known to the adjuster during that time frame. Further, in February of 2008, the surgeon notified the adjuster that claimant was totally disabled from the time of his first visit to her on September 18, 2007, and there was absolutely no contrary medical opinion of record. We therefore affirm these awards.
 

 Claimant has also answered the appeal seeking additional attorney fees of $2,000 for work on appeal. We deem this figure to be reasonable and therefore make that additional award.
 

 For the foregoing reasons the judgment of the Office of Worker’s Compensation awarding claimant benefits, penalties and attorney fees is hereby affirmed. Claimant is also awarded an additional $2,000 in attorney fees for work before this court.
 

 AFFIRMED.